Good morning, your honors. May it please the court, John Kang, certified law student under the supervision of Professor Andrew Knapp on behalf of Petitioner Melvin Amaya. I will try to get through my opening and reserve five minutes for my colleague to present rebuttal. Your honor, this case really is centered around an outlier Washington statute that Washington itself recognized was overbroad and the statute is overbroad to the point that it criminalizes conduct that falls beyond the scope of a 16A crime of violence in the INA context and thus cannot categorically be a crime of violence and trigger removal. And before we jump down the rabbit hole together, that is the categorical approach, I'd like to point out that the court's holding today will be a narrow one and it's narrowed because in 2020 the state of Washington actually revised its statute and walked back the statute to make it less overbroad. So the court's holding today really would be limited to convictions under that statute, under the previous version of the statute and certainly not the current version going forward. Now the Washington statute is overbroad specifically because subsection B of the statute criminalizes mere exposure of another to HIV. And we know that although on its face the statute requires the intent to do serious bodily harm, Washington courts have not the specific cases in our brief, but in Washington individuals have been convicted under this version of the statute for merely failing to disclose the fact that they're HIV positive and then engaging in an encounter with another individual where exposure may have someone has the duty to do something, in this case the duty to inform of HIV positive status and failing to do so. And there's clear precedent that says, for example, in Leocal, the Supreme Court says negligent conduct is just not enough to constitute a crime of violence. And the government makes the argument that HIV is analogous to poison and cites a long line of cases where the courts have held that the use of poison satisfies the force element in the crime of mere exposure of HIV involves the requisite force or the violent purposeful force required under cases such as Leocal and Johnson. The poison cases that the government cites, in those cases the courts inferred force because actual injury or at least threat of injury had actually occurred. Now, it logically follows that if injury occurred or threat of injury occurred that the statute involved the necessary use or threatened use of force. However, this Washington statute, which criminalizes mere exposure, does not require injury. Why do you say it criminalizes mere exposure? I mean, it says you have to do this with the intent to inflict great bodily harm. So doesn't that raise it quite a bit? That's true, Your Honor. Like I mentioned, well, two points. Like I mentioned before, although the statute on its face does say that, Washington courts have not interpreted it as such and merely held that knowledge of being HIV positive and failing to disclose that fact satisfied that intent to do with reins in here? The cases that we cite to in our brief, I believe one was State v. Whitfield, and there was one other Washington case that escapes me at the moment. But the state law, case law does make it very clear that that is the case. And secondly, the Supreme Court in Moncrief instructed that when we're using the categorical approach, the focus of the court should really be on the minimum conduct required to trigger a conviction under the state statute. And in this case, we've cited real life examples of how people were convicted under the state statute for merely failing to disclose that they were HIV positive. And on a separate point, HIV and poison are also not the same thing. When someone employs poison against another, the only conceivable intent there is to do serious bodily harm and thus satisfying the force requirement. However, with HIV, especially in Washington, that's just not the case. For example, your honors, if we can imagine a situation where two people are both HIV positive and they fail to disclose that to one another before engaging in a encounter, they technically could be liable under the statute, even though it would be physically impossible for them to do harm to one another. So for that reason, the statute... In the same way that if you administered poison to someone else quite deliberately and they didn't get sick, you could still be charged under the statute. That's correct, your honor. However, the inherent destructive nature of poison, I think here is distinguishable from HIV. I want to go back to Judge Breslin's question. Under 9A36-0111, the state has to show that it was done with intent to inflict great bodily harm. It's a very, very high standard. And you're telling us that Washington has done away with that with respect to HIV? That's exactly right, your honor. And Whitfield is your best case for that? Whitfield is one of the two cases that we cite in our brief, I believe. And the courts there make it very clear that in light most favorable to the state, they found that the mere failure to disclose HIV positive status satisfied the intent element there. So your honors, not only is the statute itself overbroad because of subsection B, Washington has this very overreaching and very unusual accomplice liability statute, which is read into every Washington conviction that criminalizes or that requires mere knowledge of a crime in order to statute, the first degree assault statute requires specific intent. Counselor, under your theory of the accomplice liability problem, that's the Valdivia-Flores problem, does that mean that every Washington criminal statute is now overbroad? Not necessarily, your honor. I think they would be overbroad if there is a mismatch in mens rea between the principal statute and the accomplice liability statute. This court in Valdivia-Flores said as much that this reasoning could apply to all Washington convictions, but really it's just in cases where there's a mismatch. For example, if the principal statute only required general intent, then the accomplice liability statute would be just fine. And further, we need to make the inquiry as to the accomplice liability, because it follows the theory of Duenas-Alvarez and in Rosemond, for example, where the courts there have found this mismatch to be important and thus rendered the statute in question to be overbroad and thus cannot categorically be an aggravated felony that triggers removal. If your honors have no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you, Mr. King. Thank you, your honors. Ms. Phillips, we'll go ahead and hear from you. May it please the court, Rebecca Hoffberg Phillips on behalf of the United States Attorney General. Your honor, we are going down a rabbit hole in this case that we simply don't need to do. Number one, the statute of conviction is clear which subsection petitioner was convicted of. We're not unclear in this record. In other words, the conviction record makes clear it's subsection A. We have the judgment and the guilty plea that make clear it is not subsection B. Now, I understand the way that the board decided this was to look at all the subsections and decide that even the one that they were contesting would not qualify subsection B, the one referring to poison and HIV. The board went through the whole rundown and said, well, indirect force qualifies and therefore subsection B. But if you look at the IJ's decision, which the board affirmed and which petitioner tried to brush under the table a bit in his brief, the IJ identifies subsection A as being clear in the record of conviction here. There's no need. Your honor, what I'm saying is that the statute of conviction is subsection A and we're not looking at a statute of conviction where we don't know from the conviction record and we have to decide categorically all the different subsections. I direct this court to the following pages of the record. 1132 judgment and sentence felony count one listed subsections A C. It actually lists two subsections and deliberately skips subsection B. Page 1141 statement of defendant on guilty plea charged with quote armed with a firearm. This is subsection A. 1151 felony plea agreement special finding for quote deadly weapon firearm. This refers to subsection A. Page 1156 indictment describes quote assault with a firearm. So this is a modified categorical approach that you're advocating and doesn't that invoke Judge Grass's question that we have to find the statute is divisible? Your honor, I want to clarify that the government's position is that if you only had in the record Washington revised code 9A.36.011 subsection one and that was what was listed, we would apply the categorical approach because we wouldn't know which of the means of committing the great bodily harm were issued here and we would be trying to figure out that every subsection listed would have to qualify because we only know the general statute. What we have in this case is a conviction record that specifies it was not subsection B. It was subsection A. So we're not advocating a modified categorical approach. We're simply starting with the statute of conviction, not the general statute because we have a conviction record that already narrows it down for us. Now, your honor, I understand this is what the immigration judge found in his decision and her decision. I'm sorry, her decision. She noted that it was subsection A. It's clear from the conviction record, the pages I just provided to you, there is no question in this case that we are looking at the whole statute and trying to decide categorically does every subsection qualify and I'm happy to provide supplemental briefing on this issue should the court desire it, but I read the government reads this statute of conviction is already excluding subsection B from the conviction record and that's something that the immigration judge specifically found and it's not that he was supposedly convicted of subsection A. That is exactly what the conviction record shows on the pages I cited. So all of this discussion regarding HIV and, you know, does it qualify or not, irrelevant to this particular case. We know the subsection. It is how the government argued this though in its answering brief. This seems a little different than what I'm looking at the answering brief, which had extensive discussion of this issue of HIV transmission. Yes, your honor, argument that is somehow irrelevant to our consideration here and perhaps your honor or didn't really treat this the way you're now arguing this. Your honor, the court has the authority and it's de novo review of this case to decide that the conviction record does specify the subsection and the government. I understand the brief in this case does not goes through everything and that's certainly the true and I can argue in the alternative, your honor, and we can certainly go through every subsection, but when the record of conviction specifies the subsection, that is all extra and not necessary and the court should simply just look at the conviction record and find that the subsection is specified. Many times there's a subsection and we don't know which of the next subsections. In other words, if it is that subsection A and then there was little I and double I and triple I and then we got to do the categorical approach on subsection A because we don't know which of those. What I'm merely showing here, your honor, is that it's clear from the conviction record that we have a statute where if we hadn't specified the subsection, we'd be looking at the categorical approach for every subsection, but instead we know the subsection and so that that isn't necessary in this case and I'm happy to provide the supplemental briefing on that and the court may decide that in its de novo review, but should the court nevertheless decide that it must go through every subsection here even though the IJ didn't and the standard that applies in Castleman, which this court has already found, applies in the crime and violence context in multiple cases. It is listed alongside poison and as your honor pointed out, you know, words are often, you know, by the company they keep, you can usually infer what's going on here and as your honor pointed out, you could administer poison, it might not kill someone. You could expose someone to HIV, it might not kill someone. That isn't the inquiry here. The inquiry is, you know, whether you have, you know, the attempted use or threatened use of force here by an indirect force of subjecting someone to that threat of harm to their body. Now I understand that the legislature has amended the statute, but we go by the statute as it was in at the time of the petitioner's 2004 conviction and so at the time HIV was extremely deadly and dangerous. It isn't what it is today and so the idea that the legislature grouped it alongside something like poison makes sense from the standpoint where you were subjecting someone to the, you know, the possible harm that way, whether or not it ensued. But again, your honor, the Now the other argument that he has made is also completely irrelevant and that refers to accomplice liability and there are four cases in this court that make clear that we are not concerned with accomplice liability in this case. They are Studhorse, Wuerl, Binford, and Doar and those are the four cases that matter. Wuerl was decided six days after Valdivia Flores and as the court noted in Binford, this court was presumably aware of Valdivia Flores when it decided Wuerl and yet Wuerl went differently than Valdivia Flores. Wuerl, in the crime of violence context which we are in in this case, did not concern itself with accomplice liability and instead went to the usual categorical approach of comparing elements. This was noted in Doar. Doar involved the sentencing statute and again specifically stated, well, we recognize what happened in Valdivia Flores. We're going with Wuerl. That was stated in Binford. That was stated in Doar and this court might find that the crime of violence force clause is some exception to the rule in Valdivia Flores that we look at accomplice liability. The government would respectfully disagree with that position and we would say Valdivia Flores was wrongly decided and I can further explain that in a moment. However, that's not necessary to this case either. We don't need to discuss Valdivia Flores because even if Valdivia Flores was correctly decided, this court has already held it's not applicable in the force clause context that we have here. It has said so in four cases. So there is simply no issue about accomplice liability in this case. Should the court decide to address Valdivia Flores even though it makes no difference here, the government would submit that Valdivia Flores is completely inconsistent with Rosemond. It was decided after Rosemond. It did not cite Rosemond. In fact, since Valdivia Flores, since Rosemond, the court itself has adjusted its jury instructions in section 5.1 to show that the intent to facilitate a crime is actually the full knowledge is what it means by the intent to facilitate. And so it is very clear that Valdivia Flores simply ignored Rosemond without citing to it and many courts have recognized this post-Valdivia Flores, notably the 11th circuit in a case called Bortzakis, which interestingly was cited in petitioner's reply brief. Bortzakis entirely helps the government here because as it notes, even though the framing of the Washington federal generic accomplice definition is essentially the same as the federal one. And Bortzakis goes through and notes that they both require knowledge. And Rosemond did not make clear exactly what the mens rea is and there has been dispute about that. But again, that is not going to determine the outcome of this case because we know that violence context. So that being said, I'm going to, unless the court has further questions about these issues, I was going to turn to the remaining issues regarding the due process and deferral claim. So with, yes, I'm sorry. Go, please, right ahead. Oh, yes. So with respect to the claim that he raised, he's alleging he claimed IJ bias and that the board didn't address that. And it's simply not a case of bias by the immigration judge. And if you look at the pages that he cites in support of his claim that there were bias, I believe it's 130, 133, 155, 56. He is basically claiming that the IJ statement that you're not going to be able to prevail on asylum and withholding of removal is somehow a statement of bias. That is a statement of fact. That is a statement of law. An aggravated felon is simply ineligible for asylum. And when you receive a sentence like he did, he was he was in jail for more than 12 years. He is going to be automatically ineligible for withholding of removal. It is, in fact, incumbent on an IJ to advise an applicant whether they have a chance of eligibility or not. And simply advising him that his criminal conviction was going to foreclose some relief does not show bias in the slightest. But even if it did, he didn't exhaust this properly before the board because the way that he framed it, he only referred to the immigration judge stating that his aggravated felony would preclude the relief. And that simply was not enough to put the board on notice of a bias claim. Now, he claims in his brief that he's pro se. He should file the reply brief. He only he for he was represented by counsel. And I direct this court to pages 54 to 57 of the record. In his reply brief that was counseled, he makes absolutely no mention of the deferral claim or of the bias claim. He only disputes the removability through counsel. And your honor, that's why the government has maintained that there's been a lack of his untimely filed appeal brief to the board, which is what is required to exhaust the issue if you wanted to attempt to resubmit that brief before the board, which he did not do. And so, unfortunately, he failed to exhaust of his claims regarding due process and deferral. Nevertheless, the board addressed the deferral claim on the merits. And so this court may review the deferral claim, even though a lot of specific arguments were not fleshed out previously. Your honor, it's very clear. And I filed a twenty eight J letter this morning. And I understand that it was a little bit close in time to this hearing. And I apologize for not getting into the court sooner. And I'm not sure if you've had a chance to look at it. But the case is called Flores. And it was decided just last month or in March. And it this facts are so strikingly similar. I felt that even though it's an unpublished decision, I wanted to direct the court to that case because it exactly involves an applicant from El Salvador who had tattoos that is claiming that it was these, you know, the tattoos that were going to somehow make him more likely than not going to be tortured by or with the acquiescence of the Salvadoran government. And the court rejected that. And as I pointed out in my twenty eight J, with respect to these tattoos, it is from the record, your honor, that as I said in my twenty eight J, he said he wanted to remove the tattoos. This is on page two fifty three. He was never a gang member to forty eight. The record refers to a special clinic that provides a ratio of tattoos for free. And this is on page three seventy four. He admitted the tattoos are covered when he is clothed in a shirt and blend in with other tattoos. Page one sixty four to one sixty five. The remaining evidence in the record is generalized and it follows a lot of this court's cases. For example, in our brief, we cited Del Cid Moroccan. And this, your honor, was also cited by the immigration judge on page ninety four. And the immigration judge therefore completely understood his claim because he said she cited a case that was very much relevant to every aspect of what he was claiming, because as someone who feared tattoos would make him susceptible to torture, that is exactly what Del Cid Moroccan was about. Your honor, I see that my time is about to expire. If the court has any further questions, I'm happy to answer them. Otherwise, the government will rest on its brief as well as the arguments that I have presented today. Thank you, Ms. Phillips. We greatly appreciate your argument. We'll now hear rebuttal. Mr. Glassman. Good morning, your honors, and may please the court. James Glassman, certified law student on behalf of Mr. Melvin Amaya. Your honors, I have a few points on rebuttal. The government, as you, as your honors correctly pointed out, seems to be attempting to apply the modified categorical approach. The only reason why we would do that is if the state statute of conviction is overbroad. So it seems that the is overbroad. And then, of course, to get on to the modified categorical approach, we would also need to determine that the statute is divisible. However, your honors, on page 26 and footnote six of the government's answering brief, the government very clearly declined to challenge divisibility. And accordingly, your honors, that issue is not properly before the court. And additionally, even if it were, this Washington Supreme Court has made very clear that the statute at issue here is indivisible. In State v. Smith, the Washington Supreme Court said in 2007, and I quote, between the crimes of first, second, and third degree assault, the legislature has delineated a total of 17 alternative means of commission. And your honors, as we know from the Supreme Court in Mathis v. United States, we are to look at the state's own interpretation of the statutes to determine divisibility. Your honors, I'd also like to briefly return to a few points that my colleague mentioned about this statute being overbroad. The statute here is overbroad because it's a very unique statute. Until last year, this was a unique statute in the nation in that without any limiting parameters, the statute penalized the mere exposure to HIV. And your co-counsel said the same thing, but I don't see that. I mean, that's not what the statute says. It doesn't just criminalize one person exposing another. It has a whole intent requirement, a great bodily harm requirement. So I just, I think this is an important part of your case. Where can you direct us in Washington law that would support the mere exposure theory? Certainly, your honor. And my colleague mentioned State v. Whitfield. We also have State v. Stark, where the Washington courts have noted that mere failure to disclose status of HIV positivity or the failure to take any type of precautions to prevent transmission meet this intent requirement. And so, your honors, this is much more akin to a criminal endangerment statute that had section 16B still been enforced would plausibly fit as a crime of to, just to briefly note that when Congress created section 16, it intended to create both section 16A and B. And 16A, of course, requires the use of force, the threatened use of force, or the attempted use of force. And when we're dealing with exposure, which doesn't really require any use of force, like the Supreme Court in Castleman contemplated with, for example, the affirmative use of poison, or like this court contemplated in Arellano Hernandez, similarly with the use of a pathogen like poison. Exposure and specifically exposure, as Washington has interpreted it, does not require this active affirmative use. And instead, we're dealing here with a more passive failure to act type of scenario. Your honors, I'd also just briefly in my last 40 seconds, like to mention that a complex liability here as well is not, as the government claims, irrelevant. Washington reads the complex liability into every single one of its criminal statutes. And therefore, the elements that we are looking at here to determine whether we have a categorical match with section 16 also require us to look at those Washington state accomplice liability statutes. Even though there's no, it's absolutely positively clear that Mr. Amaya was not an accomplice. Correct, your honor, because we're looking here at the possibility that he could have been charged under the Washington state statute as an accomplice. Even though he wasn't. It's a total counterfactual. Correct, your honor. And I see I'm at my time. Your honors, we ask the court to grant Mr. Amaya's petition for review. Thank you. Thank you, Mr. Glassman. The court acknowledges that Mr. King and Mr. Glassman are adhering to Mr. Amaya pro bono. We thank you for your service to the court. You've ably discharged your responsibilities and we're grateful for your representation. The court would also like to thank Mr. Knapp, your supervising attorney at Southwestern Law School. Mr. Knapp, thank you for your assistance in your work on behalf of your pro bono client, for which the court is also grateful. Ms. Phillips, we thank you for your representation of the government. We thank all counsel for their fine briefs and arguments this morning. The case is submitted.
judges: Bybee, Cardone, Bress